for the appellant is Attorney Wyman and for the affiliate is Attorney Karpus. Ms. Wyman, are you ready to proceed? Yes, I am. Thank you. I'd like to reserve five minutes for rebuttal, please. May it please the Court, Counsel. This case involves a 34-year marriage in which my client, the petitioner and appellant, Mary Taylor, devoted 34 years to raising the party's three children and to supporting her husband, Donald Taylor, in moving up his career and advancing his career, which now brings him to an earning capacity of approximately $76,000 every year, including bonuses, as the general manager or manager at the county market in Coles County, where the parties live and where the parties raised their three children. I have searched for cases in which there have been maintenance modifications after a 34-year marriage, and I wasn't able to find any 34-year marriages where that was the issue. The Court has seen some 24-year marriages, but I think this may be one that could go down in the record books as far as the length of a marriage, and in this case, as in many cases, you see a dedication of one spouse to raising the party's children. What is interesting here is that the respondent, appellee, has come back now for the second time to try to modify or terminate maintenance, his maintenance obligation, to his wife of nearly 34 years. And in this case, the court, the trial court, clearly abused its discretion in agreeing to modify downward my client's maintenance, what she was receiving. Initially, the court entered an order and sent maintenance at $1,300 per month, ordered the respondent husband to pay COBRA health insurance so my client could receive health insurance, and ordered that he pay 40% of any of his bonuses. When he filed a motion to modify two years later, the court reduced maintenance in that it modified that maintenance obligation for the amount of bonuses. What the court did here in this case that is under appeal is that it not only eliminated all of the bonuses or any of the bonuses that my client would receive, but it further reduced the maintenance obligation from $1,300 a month to $800 a month. The court clearly abused its discretion when it found that Donald had proved a substantial change in circumstances. The evidence was clear that my client had not only continued to, despite the respondent's allegations that my client had refused to look for sufficient work, the evidence and the transcripts are- Well, didn't a couple trial judges make that precise finding? The trial judge- Different trial judges? Well, the initial trial judge made that finding, and that was then a reason for reducing maintenance in 2011, in June of 2011, reducing out and eliminating out over the next two years the bonuses. Right. But the trial court in this case, Judge O'Brien, found that Mary Taylor had failed to- had made insufficient efforts, I believe were the terms, the words of Judge O'Brien, in trying to find additional work, despite the fact that not only had she found a part-time and gotten a part-time job at PetSmart making $9.35 per hour, but the evidence, if you look at and review, as I noted in my arguments and then in the transcripts, especially August 16th, starting at page 40, when she's asked, well, where have you been applying? It goes on for pages and pages. There's ESS Cleaning, Online, Home Depot, Staples, Walmart, Sears, JCPenney, Carson's, PetSmart, Sarah Bush, Rural King, Cracker Barrel. She goes every month into the unemployment office. She applies at Lenders, which has their main office in Mattoon. She goes to the employment search engine Indeed.com and updates and refreshes her applications on a monthly basis. She does her test at General Electric. During the six-year period, or over the last six years, when we have had the worst recession since the Great Depression, she has continued to apply for and look for jobs, on top of the odd jobs that she was doing and has been doing, the cleaning houses, walking dogs, anything that she can get through word of mouth. She's continued to do that and continued to apply for jobs. She finally was able to obtain this part-time job, which makes $115 a week, compared to her husband, who is making $76,000 a year, probably about ten times more than my client is making. In addition, of course, Donald is remarried and has income from his spouse on which he can rely. There is no suggestion that he cannot afford to continue paying maintenance or pay even a higher amount of maintenance. But the evidence is clear that despite the requirement that in determining the amount of maintenance, the trial court should consider the party's income at the time of dissolution as well as their potential incomes, that my client no longer can afford health insurance. Her husband has health insurance through his employment. My client has none. My client has no dental insurance. Her debts have increased in just a nine-month period from the beginning of 2012 to September of 2012, had increased drastically. She has not only more debts but can't put anything into any retirement account. She has no retirement account. After 34 years of dedicating her life to her husband and their children, she has nothing. She received part of the 401K, used that to try to live on, but those funds have been exhausted. I thought the trial court referred to some pension, that the maintenance would continue until she started to receive her pension. I believe that she received all the funds that she would be receiving. What does pension mean? Well, no, I'm sorry. I believe, and I'll check while Mr. Karpus is making his arguments, but I believe that she has received all of the funds because it was not sure that it was a pension. I think there was a 401K, and she received the marital split of her 401K under that. The respondent suggested in his arguments and in his petition that she has made insufficient efforts to find work. The transcript, the evidence is a lie. You said the other side is arguing that. That's what two trial judges found. That's what I was asking before. Why were they willing to make such a finding? Well, the trial court, and I wasn't attorney of record in the initial case or in the initial request, they did find that at least Judge Ryder back in 2011 did find that she had made insufficient efforts. That's prejudicata. But since that time, since June of 2011 when the court entered that order, the idea or the suggestion that she has not made sufficient efforts since then is belied by the record, is belied by the numerous cases of page after page beginning at page 40 on the September 16th, sorry, August 16th transcript of the places that she would go to week after week, month after month to refresh her applications. What did the trial court find? I know you presented that evidence to the trial court page after page after page. What did the trial court conclude? The trial court concluded, as you state, that she has failed to make sufficient efforts to find employment. And while the parties note, or while the court notes, her earning capacity has been negatively affected by the fact that she devoted time to domestic duties, that she had made, and I'm looking for the exact citation, she's, Mary is not, let's see, her capacity to earn more in, on page A3 that's part of the record C467 with respect to present and future earning capacities, the court notes it's beyond dispute that Donald's earning capacity well exceeds Mary's, but as far as Mary's present and future earning capacity is questionable in light of her age. She's 59, or at the time was 59, and lack of experience or training. She has a high school education. On the other hand, she's not likely to find a job that pays a great deal more than her current rate of $9.35 per hour. She's also not physically limited to part-time work. Thus, her capacity to earn more now than she now earns is also evident. If the jobs were there, if she was offered more jobs, if she could get another offer for a job, she would take that, and that's in the record as well. But despite all of these applications and the statement by the court at A6 in C470 of the record, the court's ruling in its order of December 12, 2000, and its order of 2012-2013, that the court, it's not unreasonable to expect Mary to work 30 hours per week. That's taken, and I think that's a clear abuse of discretion. She's never been offered 30 hours a week. She takes all of the hours she can get at PetSmart. But in this recession in rural Illinois, for a high school graduate who is 59 years of age and essentially has not worked outside, didn't work outside the home during that 34-year marriage, it's unreasonable for the court to raise that, to conclude that, and to suggest then that all she should receive as maintenance after this 34-year marriage is $800 a month when the husband clearly has the ability to earn that. And when Mary's income has been reduced despite earning $115 a week at PetSmart on average, but she can no longer afford and no longer has health insurance since Donald didn't have to pay his COBRA after, I believe, three years after the marriage dissolved. And Donald's abilities to pay maintenance has increased. As the court did note accurately, he's doubled his 401K retirement. He's doubled the contributions. He's doubled his payments on his Harley. So he has that ability. He goes on vacations, goes down to Florida, spends thousands of dollars a month on restaurants for him and his wife, while my client, as the testimony and the evidence shows, can't even put food in her refrigerator. There's nothing more than like a dozen eggs in her refrigerator at a time because she doesn't have the funds. She waits for a time to be able to house clean and get $20 to be able to buy some groceries or put gas in her car. Counsel? Yes. This is an unfortunate situation from either side. Sure. But I want to ask again because I'm not sure that Justice Turner received an answer. You've got two different judges, five or six years apart, because the original was in 2007 when the trial judge is saying, you have not made sufficient efforts. In 2007, the trial court found, since the parties separated, which would have been earlier than that, Mary has made no efforts to find employment nor to obtain training or education that would increase her employability. So then we're back in court five, six, now seven years later, and another judge has made the same determination. So even if she was in, she's in total maintenance. Right. And I think there's no question about that. Right. But if two trial courts, based on the record before them, have found minimal or no, what do you say, effort or success? Well, because both, they tend to fit together. But I understand that you would argue that there had been no success, and part of that's the economy and part of that's the rural area. Sure. And the Petco job comes so quickly before the hearing, the timing of that. It is, I don't know if you call it serendipity. I mean, we were elated that she got a job. I understand that. Two different judges looking essentially the same effort, evidence, and the passage of time. Right. Make the finding that the efforts have been woeful. Well, I understand that argument, and I'll try to answer the question. It isn't an argument. Those are findings. I understand that finding. I believe Judge O'Brien's finding, which is the case we're appealing now, is a clear abuse of discretion based on the evidence and the record before the court. I'm not going to argue that she didn't make sufficient efforts before, because that's a finding by Judge Ryder that was not appealed. That was not counsel record, and so I can't say what that record showed. But I can say that the record in this case before this court shows that Mary Taylor was making efforts from, clearly from the last time the court entered its order in summer of 2011 and was going, applying for goodwill interviews, asked her friends for jobs. Her friend was working at GE and did a testing there. She's applied at Lender. There's Indeed.com, which is a website where you apply for jobs, and then was going to places around Coles County as well, and in addition to going to the unemployment center on a monthly basis, refreshing her applications there, there's evidence of she would take her daughter, her granddaughter, to Sarah Bush, the medical center there, and saw that they were hiring, she applies there. There wasn't a place, I think, in Coles County that she didn't apply. And so the finding by Judge O'Brien, while similar to the finding of Judge Ryder, Judge O'Brien's finding is contrary to the evidence in the record that suggests that she didn't make sufficient efforts or was insufficient in her efforts to seek employment. The suggestion that she could work or could expect to work 30 hours a week is without any basis in the record. There's nothing that suggests that she's ever been offered or could get a job for 30 hours a week. She's grateful for the 15 to 20 hours a week that she receives and the $115 a week that she averages from PetSmart, but that's simply not only insufficient to meet the standard of living that she and Donald acquired during this 34 years of marriage, when she got married shortly after high school graduation. Was the trial court also found, since they both filed for bankruptcy, they were living beyond their means? The court found that they had lived beyond their means during their marriage. Now, they had two houses as well. But, yeah, they had, but that they had a comfortable standard of living. And there is no contrary evidence that suggests that Donald can't afford to continue to pay Mary the $1,300 a month, in fact more than that, based on his income of the $76,000 per month, not even taking into consideration his wife's income. And, again, these additional don't... But just because they had a comfortable standard of living doesn't mean they weren't living beyond their means. I agree with that. I would agree with that. But the evidence of how Mary is living now, no health insurance, no dental insurance, no vision insurance, can't go on vacations... Those are compelling arguments, but the trial court obviously didn't... I think it clearly abused its... I believe that they were compelling enough. Well, I believe, and that's why we're here, because I believe that was clearly an abuse of discretion with the trial court to find and suggest, one, that she only needs $800 a month as opposed to the $1,300, in part because she can expect to work 30 hours a week when there was no evidence or suggestion. Now, $1,300 a month... And I suppose the other thing is that there's a suggestion or decision by the trial court that she has the... that she should be able to... that that's all she needs. And the fact is she needs much more than that. $1,300 a month isn't going to get her back to any comfortable standard of living, but it might be able to help her pay for some health insurance. Counsel, is the failure to make a good faith effort to achieve financial independence considered a substantial change in circumstances? I don't believe so. I think that if this were rehabilitative maintenance, that would be the case. This is clearly not a case of rehabilitative maintenance. This was permanent maintenance. And as the court... this court has noted in other cases, the... including the Walker case, 4070730, permanent... or back from 2008, permanent maintenance should be awarded where a spouse is not employable or is only employable at a lower income as compared to the spouse's previous standard of living and not... should not be required to lower the standard of living established in the marriage as long as the payer spouse, in this case Mr. Taylor, has sufficient assets to meet his needs and the needs of the former spouse. The words aren't listed as in the original order whether it's permanent or rehabilitative, but the fact that it was a 34-year marriage and there's no suggestion that it's reviewable in a certain number of years or pursuant to certain conditions, I think, suggests that there isn't... that isn't a substantial change in circumstances. Or even if it were, that the court... that Donald Taylor did not prove that in this case in which it is unappealable for the court. Judge Ryder, the trial judge, was the first judge to modify... Yes. Was Judge Ryder also the judge who did the original maintenance order? I don't believe so. Because surely she would know... Right. ...whether it was... I don't believe... ...permanent. Yeah, I will check. I don't believe she was the first one, but I can check while Mr. Karpus is making his arguments. Thank you.  Mr. Karpus. Thank you. May it please the Court of Counsel. Good afternoon. Like Ms. Wyman, I am a newcomer to the situation also. In fact, to answer one of your questions, the original judgment was in fact entered by Judge Ryder and the second order from 2011 was one that was entered by her also. Of interest to note is that with regard to each of those orders, in paragraph K, which is one of the ordering paragraphs in the 2007 judgment, Judge Ryder specifically makes reference that, quote, said payments regarding the maintenance and the bonus documentation, said payments shall continue until further order of the court. And with regard to the order of December 11, once again by the Honorable Judge Ryder, she says, quote, the monthly obligation remains until Mr. Taylor retires and the pension benefits, Ms. Taylor was awarded, take effect or until further order of the court. So our position is that there is a clearly ascertainable time frame upon which this maintenance obligation is to terminate and we have cited the gun case to that effect. That would be until Mr. Taylor retires and the pension benefits, Ms. Taylor was awarded, take effect. That has not happened yet. What are those? I'm sorry? It hasn't happened and what are they? Well, that would be whenever it is he decides to retire. No, no. What are the benefits? Oh, the benefits. Okay, well, the monthly pension benefits, I believe, are set forth in the qualified domestic relations order that was entered back in the trial court way back when. And does that have anything to do with the 401K or is it the 401K? No, I take the word pension to mean pension and 401K to be something different. And that's already been divided? Pursuant to the quadro. And once he retires, they'll get their pension. Yes, Judge. Yes, Judge. That's exactly. Neither of those circumstances have occurred. That is correct. So what is the substantial change of circumstances that allows a reduction down in maintenance? We believe that this is a rehabilitative maintenance situation because there is a definable time when these things are to terminate, the maintenance obligations to terminate. But you don't call it rehabilitative when it's going to terminate when pension benefits kick in. Because there's nothing rehabilitative about that if that's not going to be for 10 or 15 or 20 years. But there's nothing also that says that this is a permanent order either. Judge Ryder leaves open the opportunity here for a modification when she says in both the 2007 judgment and the 2011 order that these things stay in place until further order of the court. All maintenance obligations stay in place until further order of the court. One of the parties being married, if you come back, and you can terminate marriage. Understood. If there is a change in circumstances, you can modify. But we believe the change in circumstances from the 2011 order is the fact that she continued to not try to secure some sort of employment that would make her self-supporting. How is that a change in circumstances? I'm not following. Well, it's a change in circumstances from the fact that the order from 2011 basically put the parties in the position to where that evidence was based on. The fact that she continued to not do that is an additional change in circumstances because she's told she has to do this. She has to do something to become self-supporting. And, in fact, Judge O'Brien in his order from 2013 indicated that many of the pieces of evidence with regard to employment were the same things that she submitted back in 2011. Except that it's pretty clear that there is absolutely no thought on anybody's part that she can be self-supporting. Maybe she can be self-supporting with maintenance plus more hours or a better job, but not that she's going to become self-supporting. Well, I would quarrel with you as far as that goes, Judge, simply because we don't know. The idea that Mary indicated in her testimony that while working at PetSmart they hadn't offered her full-time employment, but if they did, she would take it. At $9.35 an hour and she's 59 years old with a high school education, how is she ever going to be able to support herself at anywhere near what they were living on during the marriage? It's a 34-year marriage. I understand that. I think the fact of the matter is the answer is we don't know simply because of the lack of effort. And we get back to the timing of these efforts in relation to when it is that Donald filed his petition back in May of 2013. Many of these things that Judge O'Brien cited as were testified to with regard to ESS cleaning and Sarah Bush and things like that, those were all things that were filed after Donald filed his petition in May of 2013. The answer is we don't know. That's the thing, because of the lack of effort. And that is a change in circumstance with this being a rehabilitative maintenance situation. The standard on the review, obviously, is that with regard to the various things that have been presented to you is an abuse of discretion. And the fact of the matter is also that Judge O'Brien, in his order from December of 2013, our position, obviously, is that he took painstaking effort to go through the evidence, painstaking effort to apply that evidence with regard to the law in place, and to come up with his decision. This is not a one-paragraph order that he just threw out without any definition at all as to what it is that the evidence showed and what the law is. We do not believe that there has been an abuse of discretion on any of the points that have been raised by Mary in her brief. Counsel, how about the argument that the trial court says she's capable of working 30 hours a week, but there's no evidence that she's ever had that opportunity to work 30 hours a week? Two points. First, triers of fact draw conclusions from evidence regularly. Point one. Second is we have the fallback on the fact that there has not been that concerted effort to try to achieve. Not to achieve, but to try to achieve self-sufficiency. So those two points there, I don't believe it was inappropriate for the trial judge to make that ruling or make that assumption based on the evidence that was presented, because we did have her being able to admit that she had full-time employment if it was presented to her, she would take it at PetSmart. But once she got the part-time job at PetSmart, the testimony was that all efforts to secure anything outside of PetSmart's part-time employment terminated. She admitted to that. So the fact that Judge O'Brien made that assumption based on the evidence is, I think, a fair one to make as the trier of fact. Mr. Karpus, she's basically impoverished. The testimony at trial was she had a dozen eggs in her refrigerator. She can't afford to go grocery shopping. So it seems to me a person in her position would be desperate to find another source of income if she was able to. In light of that desperation, Judge, I would ask you a question. Why would she cease efforts and be content with part-time work? And that's essentially what she has done. Her efforts have ceased. And she's admitted to that in her testimony. She can't get Social Security until she's how old? I think 62. I don't know. That would be based on his record. She's never worked enough quarters, I would imagine, to even get her own benefit. I don't know that for a fact, Judge. Any other questions? I don't see any. Thank you, Justice Karpus. Thank you, Judge. Thank you very much. With regard to the suggestion that Mary stopped or ceased looking for other employment once she got the PetSmart job, I believe that's belied by the record. She continued to look. She continues to try and do the house cleaning, dog walking, when friends have houses that they're renting out and they need to be cleaned between renters. She continues to do that. What her testimony was at trial was that she's not going to quit PetSmart and try and get another job. If PetSmart is able to give her more hours, she takes all the hours she can get. But PetSmart doesn't hire people for more than part-time except managers, and she doesn't have the education or qualifications to become a manager. Again, the suggestion that she was unable or unwilling to look for additional work or said she had ceased working, I believe that the evidence, when she was clearly asked in the hearing You mean there's evidence in the record that during the three weeks between the PetSmart job and the hearing, there's evidence in the record that she was continuing to look for and apply for jobs? I believe that actually because we had three separate evidentiary hearings. Oh, they were continuing? Yes, so up until the beginning of December that she was continuing to do so. Additionally, so she didn't stop looking for work. The idea or the suggestion, the argument by opposing counsel, that she didn't start really looking for jobs until Donald filed his petition claiming she hadn't been looking, is again belied by the record where it says in 2011, this is after Judge Ryder made her initial modification, Mary Taylor was out. She did the goodwill on-site interviews. She did the testing at GE that she was able to get in and do a testing and get an application from one of her neighbors who worked there. That she was going in monthly to the unemployment office applying to lenders. All of those were in 2011, 2000 and early 2012, well before Donald filed his petition. Now she continued after he filed his petition and there's additional, the testimony is there's certainly additional places that she continued to go back. She essentially went and renewed her applications and in this more modern era where she would also go online and do a lot of the searches online and ask those. The court had asked about Social Security and her ability and her access to Social Security. I believe Donald has to retire first and then she would become eligible I believe as early as 62, but you take this reduced amount if you go before 62 and I don't remember now if they've raised it to 67 before you get full amounts or 65. In any case, she's not eligible now and depending on when Donald decides to retire, that will decide when she would be eligible for her reduced portion on Social Security. How about, is there a pension? There is and I'm sorry I didn't have that earlier. There were under, it said C-133, the Qualified Domestic Relations Order, that was the defined contribution plan. Now it doesn't say. Is that anything to do with the 401K? It's separate from the other quadro that was the 401K. That was at C-138, but the C-133 is from the pension plan. Now she is not able to get that yet. I believe she doesn't receive that until he would retire or decides he's going to retire. That's at C-133 through 137. But again, he's in the driver's seat. He decides when he retires. He decides when essentially Mary would then be able to access the things that she was granted. I'm not sure that's correct on the Social Security. You might want to check into that with a client. I don't think that's dependent on when he retires. It's dependent on when she reaches a certain age. But because they're divorced, I'm fairly certain. Okay. The earliest she could receive it, I believe, is 62 at any point. But I will check on it. And she's, I believe, 59 at this point. Final issue or the other main issue, there was the petitions for contempt in which Donald had failed to or had blacked out documentation after petitions for contempt were filed. He then provided the funds that were due. But we had to file those petitions for contempt. Finally, the court granted only a portion of the attorney's fees, incurred $8,635 in attorney's fees. Ordered Don to contribute only $3,635. When he was paying no money in attorney's fees, my client incurred $8,600 in attorney's fees. And the evidence showed clearly $115 a week compared to $76,000 for the year that he could clearly have afforded to pay that. He paid nothing in attorney's fees in the trial court. And so we would ask that the court order full payment on that. We'd ask the court that the trial court's decision on maintenance be reversed and remanded with requirement for restoring the full amount of maintenance plus health insurance costs. Thank you. I also take this matter under advisement of being released.